UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,       ) | |
| )  | |
| Plaintiff,       ) | |
| )  | |
| v.                                                 ) | Case No. 10-CR-0053-CVE |
| )  | |
| MARK ANTHONY WHITE,       ) | |
| )  | |
| Defendant.       ) | |

**OPINION AND ORDER**

Now before the Court is Defendant's Motion to Suppress Evidence and Brief in Support (Dkt. # 9). Defendant Mark Anthony White is charged with being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), and he asks the Court to suppress a firearm seized during a vehicle search on December 16, 2009 and any subsequent statements made by defendant. Dkt. # 9. The government responds that defendant was a passenger in a vehicle stopped by police and he voluntarily informed police that there was a firearm in the vehicle. Dkt. # 14. An evidentiary hearing on the motion to suppress was held June 7, 2010.

**I.**

Warne and Booth testified as follows: On December 16, 2009, Tulsa Police Department (TPD) Officers Kevin Warne, James Bohanon, and Brian Booth, all members of TPD's gang unit, were assigned patrol duty near the Mingo Valley police station in Tulsa, Oklahoma. Warne's usual partner was not working that night and he partnered with Bohanon and Booth, because TPD rules discouraged gang unit officers from patrolling without a partner. Warne was driving an unmarked police vehicle and pulled out of the Mingo Valley police station on East 11th Street. Bohanon was seated in the front passenger seat and Booth was seated in the back seat behind Bohanon. Warne

observed a tan, four-door vehicle heading westbound on East 11th Street make an illegal right turn onto South 101st East Avenue. Warne testified that the vehicle made a right turn without using a turn signal.[1] Warne pulled behind the vehicle and turned on the unmarked vehicle's lights to initiate a traffic stop. He also noticed that the driver, later identified as Aaron Wheat, was not using his seatbelt. Warne testified that the vehicle came to a stop on South 101st East Avenue, and he observed the passenger in the back seat making furtive movements. The back seat passenger leaned over and disappeared from Warne's view, and shuffled or adjusted himself as if he were uneasy.

There were three men in the vehicle and each officer approached a different person in the vehicle. Warne approached the driver, Bohanon approached the passenger in the front seat, and Booth approached the passenger in the back seat. This corresponded to their respective positions in the unmarked police vehicle, and Booth testified that it was "instinctual," rather than by agreement or discussion, to approach the vehicle in this manner. Warne asked the driver for identification and talked to the driver for about 10 seconds. Booth approached the passenger in the back seat, later identified as defendant, and defendant quietly told Booth that there was a gun in the car. Booth asked defendant to exit the vehicle and detained defendant, and Booth told the other officers about defendant's statement. Warne had not heard defendant's statement, but he and Bohanon removed the other two men from the vehicle and placed them in handcuffs. Bohanon returned to search the vehicle for the firearm, and recovered a chamber-loaded pistol from underneath the front passenger seat.

---

[1] Booth testified that the vehicle made a right turn without signaling and failed to move into the far righthand lane before turning.

Defendant asked to speak privately with Booth. Defendant told Booth that he was working with "Sticks," and this alerted Booth to the fact that defendant was serving as a confidential informant for TPD Officer Larkin. Defendant also stated that he had the gun for protection, because someone was trying to kill him. Warne took defendant to the Mingo Valley police station, and defendant also told Warne that he was working with Officer Larkin. When they arrived at the police station, Warne advised defendant of his Miranda rights and defendant agreed to waive his Miranda rights. Defendant told police that his brother had given him the gun for protection, because someone named Willie Henderson was trying to kill him. Warne did not arrest defendant, because defendant was cooperating with Officer Larkin. However, defendant did not resume his cooperation after being released. Warne prepared a typed TRACIS report after defendant was released, and he had drafted a handwritten arrest and booking report before defendant was taken to the police station. The arrest and booking report did not list an illegal right turn as a basis for the traffic stop, and stated only that Warne observed a seat belt violation. The TRACIS report noted that Warned observed an illegal right turn and a seat belt violation.

Wheat testified at the suppression hearing, and his version of the events varied greatly from Warne's and Booth's testimony. Wheat testified that he was driving to his aunt's apartment on South 101st East Avenue, and defendant and "Steve" (whose last name he claimed not to know) were riding in his car. He claims that police attempted to initiate a traffic stop before he turned onto South 101st East Avenue, and he turned onto South 101st East Avenue to get out of traffic after Warne turned on the unmarked vehicle's police lights. Wheat testified that Warne, Bohanon, and Booth came out of the unmarked police car with their guns drawn and he saw a red infrared beam

pointed at the back of Steve's head.[2] The police officers took Steve out of the car and handcuffed him. Wheat did hear defendant tell a police officer that there was a gun in the car, and it was at that point that defendant was removed from the vehicle and handcuffed. Wheat testified that he was also removed from the vehicle by an unidentified police officer. Wheat acknowledged that he had come forward with this version of events about two weeks ago when defense counsel asked to speak to him, but he denied that any person asked him to testify as to specific facts.

## II.

Defendant argues that there was no basis for police to conduct a traffic stop, and he asks the Court to suppress the firearm and any statements made by defendant.[3] The government responds that officers had reasonable suspicion to initiate a traffic stop and developed probable cause to search the vehicle before they found the firearm under the front passenger seat. The government also argues that defendant's statement alerted police to the presence of a firearm, and they could conduct a protective sweep of the vehicle for officer safety.

---

[2] He first testified that the officer he spoke to did not have his gun drawn, and later changed his testimony that all three had their guns drawn.

[3] Defendant claims that he has standing to object to the search of the vehicle, because a passenger of a vehicle during a traffic stop has been seized for the purpose of the Fourth Amendment. Dkt. # 9, at 2-3. At the suppression hearing, defendant clarified that he was challenging the legality of the traffic stop only. As a passenger of the vehicle, he has standing to challenge the legality of the traffic stop. Brendlin v. California, 551 U.S. 249 (2007); United States v. White, 584 F.3d 935, 945 (10th Cir. 2009). However, the Supreme Court has not decided whether a passenger may challenge the constitutionality of a vehicle search. United States v. Cortez-Galaviz, 495 F.3d 1203, 1205 n.3 (10th Cir. 2007). Although decided before Brendlin, there is binding Tenth Circuit precedent holding that a passenger lacks standing to challenge a vehicle search, and this is still the law in the Tenth Circuit. See United States v. Nava-Ramirez, 210 F.3d 1128, 1131 (10th Cir. 2000).

A traffic stop is treated as an investigative detention, and such a stop is governed by the standards set forth in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). When determining the reasonableness of a traffic stop, a court must make two separate inquiries. First, did the police officer have a valid reason for initiating the traffic stop. United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Id. Second, a traffic stop must not become an unnecessarily lengthy detention, but must be limited in scope to the purpose of the initial traffic stop. United States v. Rice, 483 F.3d 1079, 1083 (10th Cir. 2007). A police officer may extend the length of the traffic stop for questioning beyond the initial purpose of the traffic stop only if the officer has "an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning." United States v. Ramirez, 479 F.3d 1229, 1243 (10th Cir. 2007).

In this case, Warne testified that he observed a tan, four-door vehicle, make a right turn without using a turn signal, and he observed that the driver of the vehicle was not wearing a seat belt. Both of these acts constitute traffic violations under Oklahoma law. See OKLA. STAT. tit. 47, § 11-604 ("No person shall so turn any vehicle without giving an appropriate signal . . . in the event any other traffic may be affected by such movement); OKLA. STAT. tit. 47, § 12-417 ("Every operator and front seat passenger of a passenger car operated in this state shall wear a properly adjusted and fastened safety belt system . . . ."). Booth testified that he saw a tan vehicle make a right turn from the middle lane and without using a turn signal, and he believed that the driver of the vehicle may have made an illegal turn due to the presence of the police. Although there is a slight

inconsistency between Warne's and Booth's recollection, the Court finds that this does not detract from their credibility. Police officers conduct many traffic stops, investigations, and arrests, and the incident giving rise to this case occurred over six months ago. Warne's and Booth's testimony is consistent in key respects as to the date, time, location, and basis for the traffic stop, and a minor inconsistency concerning the nature of the illegal right turn does show that their testimony lacks credibility. The Court finds that Warne's and Booth's testimony that Wheat made an illegal right turn and was not wearing a seat belt is credible, and they had reasonable suspicion to believe that a traffic violation occurred.

Defendant argues that Warne prepared two written reports and the reports are inconsistent as to basis for the traffic stop. A handwritten arrest and booking report prepared by Warne listed Wheat's failure to wear a seatbelt as the traffic violation, but Warne did not mention the illegal right turn. Warne also prepared a typed TRACIS report stating that he initiated a traffic stop after observing an illegal right turn and a seatbelt violation. Warne testified that the handwritten report was prepared at the scene of the traffic stop, and he drafted this report when he believed that defendant would be arrested. He described the arrest and booking report as a "probable cause statement," and testified that it did not need to contain a complete recitation of the facts. The TRACIS report was prepared after Warne had decided to release defendant, and it was intended to be a more complete statement of the incident. This is a reasonable explanation for the inconsistency between the arrest and booking report and the TRACIS report. Warne testified that an arrest and booking report is prepared at the scene of the incident giving rise to an arrest, and the purpose of the report is to establish probable cause for an arrest. In this case, the basis for the arrest was defendant's possession of a firearm, not the traffic violations, and the arrest and booking report did

not need to identify each traffic violation creating the basis for the traffic stop. In fact, defendant was not driving the car and could not be charged with a traffic violation, and it was not necessary to identify each traffic violation in the arrest and booking report. The Court finds that this inconsistency in the arrest and booking report and the TRACIS report does not detract from Warne's credibility.

Defendant attempts to use Wheat's testimony to create an inference that police initiated the traffic stop under false pretenses, and he claims that police did not actually observe a traffic violation. However, Wheat's testimony contains numerous internal contradictions and the Court finds that his testimony is not credible. Wheat initially testified that two officers approached his vehicle with guns drawn, because he testified that the officer who approached the driver's side and removed him from the vehicle did not have his gun drawn. However, he later testified that all three officers had their guns drawn. Wheat claimed that he was driving to his aunt's apartment on South 101st East Avenue, and this suggests that he intended to turn right on South 101st East Avenue. He had earlier testified that he turned right onto South 101st East Avenue because police were attempting to initiate a traffic stop. Thus, Wheat's testimony about his travel plans is not credible. Wheat initially testified that police removed Steve, defendant, and Wheat from the vehicle without asking any questions, but then he later testified that defendant told police about the gun under the front passenger seat before defendant was removed from the vehicle. The Court also finds that it is unlikely that police targeted an infrared beam at Steve's head, because defendant has presented no evidence that TPD officers routinely carry firearms with infrared targeting beams.

There is no indication that the traffic stop was an unreasonably lengthy detention. Booth testified that defendant voluntarily informed Booth that there was a gun in the car, and Booth

immediately advised Warne of defendant's statement. Warne testified that this occurred approximately ten seconds after he made contact with Wheat, and police officers immediately removed Wheat, defendant, and Steve from the vehicle to conduct a protective sweep. Bohanon searched the back seat of the vehicle and found a firearm under the front passenger seat of the vehicle. Police had not completed the purpose of the traffic stop when defendant alerted them to the presence of a firearm, and there is no basis to believe that the length of the detention was unnecessarily lengthy. Thus, police had reasonable suspicion that a traffic violation occurred and the length of the traffic stop did not exceed the scope of an investigative detention, and the traffic stop complied with both requirements of Terry.

Even if defendant had standing to challenge the legality of the vehicle search, the government argues that police had probable cause to search the vehicle for a firearm. The Supreme Court has stated that probable cause is a "fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." Illinois v. Gates, 462 U.S. 213 (1983). "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched." United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990). "Probable cause to search a vehicle is established if, under the '*totality of the circumstances*' there is a 'fair probability' that the car contains contraband or evidence." United States v. Nielsen, 9 F.3d 1487 (10th Cir. 1993). Warne observed the passenger in the back seat, later identified as defendant, lean over and shift uneasily in the back seat, and this suggested that back seat passenger had placed something on the floorboard of the vehicle. Defendant voluntarily told Booth that there was a firearm in the vehicle, but he made no attempt to inform Booth that his possession of a firearm was lawful. Carrying a concealed weapon without a permit

8

is a violation of Oklahoma law.  OKLA. STAT. tit. 21, § 1272.  Based on these facts, police had probable cause to believe that there was a firearm in the vehicle and they could search the vehicle for a firearm.

Even if probable cause was lacking, police could have removed defendant from the vehicle to conduct a "protective sweep" of the vehicle to search for firearms that might be accessible to occupants of the vehicle.  United States v. Dennison, 410 F.3d 1203, 1212 (10th Cir. 2005).  The Tenth Circuit has stated:

> An officer in today's reality has an objective, reasonable basis to fear for his or her life every time a motorist is stopped. Every traffic stop, after all, is a confrontation. The motorist must suspend his or her plans and anticipates receiving a fine and perhaps even a jail term.  That expectation becomes even more real when the motorist or a passenger knows there are outstanding arrest warrants or current criminal activity that may be discovered during the course of the stop.  Resort to a loaded weapon is an increasingly plausible option for many such motorists to escape those consequences, and the officer, when stopping a car on a routine traffic stop, never knows in advance which motorists have that option by virtue of possession of a loaded weapon in the car.

United States v. Holt, 264 F.3d 1215, 1223 (10th Cir. 2001).  When a motorist volunteers that a firearm is present, "that will undeniably be an important piece of information causing the officer to proceed with greater caution," and ordering the occupant out of the vehicle is permissible. Id. at 1223.  A protective sweep may be conducted only if police have probable cause to arrest an occupant of a house or vehicle and police have a reasonable belief based on specific and articulable facts that an individual present at the scene poses a danger to police officers.  United States v. Freeman, 479 F.3d 743, 750 (10th Cir. 2007).  Even if defendant has standing to object to the vehicle search, the Court finds that the police reasonably believed that defendant or another occupant of the vehicle was armed and properly ordered the occupants out of the vehicle. Defendant voluntarily told police that there was a firearm in the vehicle and Warne observed defendant making furtive

9

movements that reasonably appeared to be an attempt to hide the firearm. Booth testified that defendant used a soft voice to inform him about the presence of a firearm. Under the circumstances, police officers could have arrested defendant for illegally possessing a firearm and had specific facts suggesting that there was a need to conduct a protective sweep for officer safety. Bohanon conducted a limited search of the vehicle to retrieve the firearm, and there is no indication that Bohanon's search exceeded the scope of a protective sweep.

At the hearing, the Court asked defense counsel if defendant intended to challenge the admissibility of statements under <u>Miranda v. United States</u>, 384 U.S. 436 (1966), and defense counsel advised the Court that defendant was not seeking to exclude any statement under <u>Miranda</u>. Therefore, the Court does not reach this issue.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence and Brief in Support (Dkt. # 9) is **denied**.

**DATED** this 8th day of June, 2010.

_____
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT